IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| LAURIE STAFFORD, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 3:10-CV-1378-M |
| | § | |
| HUNT COUNTY, TEXAS, and | § | (Consolidated with NO. 3:10-CV-1395-M) |
| RANDY MEEKS, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion for Summary Judgment [Docket Entry #25]. For the reasons explained below, the Motion for Summary Judgment is **GRANTED**.

### I. FACTUAL BACKGROUND[1]

Plaintiff Laurie Stafford suffers from astigmatism, an eye disorder which makes it difficult for her to see in the dark.[2] On November 4, 2008, Stafford quit her position as a jailer in Rockwall County Jail's control room, which was generally dark, after she concluded that her eye disorder could "jeopardize jail security."[3] On December 8, 2009, Hunt County hired Stafford as a jailer.[4] Before she was hired, Stafford did not inform Hunt County of her eye problems, nor of her reasons for leaving Rockwall County Jail.[5]

In Hunt County, each jailer must participate in a training program.[6] Jailers must be able to perform a variety of duties at Hunt County's jail, including operating the control room's

---

[1] The Court finds these facts to be true, since they are established by the proof submitted with the Defendants' Motion for Summary Judgment, to which Plaintiff has not responded. However, the Court may not grant the Motion for Summary Judgment merely because it is unopposed. *See Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)).
[2] App. 4, 207, 208.
[3] App. 8, 77, 211–13.
[4] App. 34, 129.
[5] App. 38.
[6] App. 215.

electronic communication system and control boards and knowing the jail's emergency procedures.[7] An essential function of a Hunt County jailer is working in the control room.[8] If a trainee cannot work in the control room, she cannot satisfactorily complete her training.[9]

While in training, Stafford informed her field training officers ("FTOs") that she had trouble working in a dark control room due to her astigmatism.[10] According to Sergeant Nash, who worked in the control room, there is no requirement that the lights in the control room must be kept off, and, during Stafford's training, he informed Stafford that she could leave the lights on while she worked in the control room.[11]

On January 21, 2010, Stafford's doctor informed Hunt County that Stafford had an irregular astigmatism and that it would be "extremely difficult for her to work and function effectively in a control/dark room type of environment."[12] On January 28, 2010, Hunt County hired Dr. Coble to examine Stafford, to determine whether she was fit for duty and, if not, whether her eye problem could be accommodated.[13] Dr. Coble informed Hunt County that Stafford had an astigmatism, had some difficulty in "lighted situations," and needed "proper visual correction."[14] Stafford admitted that her vision could be improved, but not completely corrected, with the use of glasses.[15] According to Stafford, her astigmatism only restricted activities that required her to take off her glasses, such as swimming, and did not have a "big impact" on her daily activities.[16]

On January 29, 2010, Manford Greninger, the Hunt County jail administrator, told

---

[7] App. 130, 138, 145, 215.
[8] App. 130–31.
[9] App. 215–16.
[10] App. 158, 166.
[11] App. 156.
[12] App. 207.
[13] App. 132, 208.
[14] App. 208.
[15] App. 26–27.
[16] App. 4, 26–27.

Stafford he was aware she could not effectively perform all her assignments due to eyesight limitations, and told her she had ninety days to resolve the problem, or she would be terminated.[17]

Stafford admits that there was nothing extra that could have been done to allow her to work in the control room, acknowledges that she never asked for an accommodation, and states that she does not know if any accommodation could have been made.[18] Stafford explains that even with the lights on, she could not work in the control room because she could not see the numbers on the control boards.[19]

During her training, Stafford also exhibited what Hunt County designates as "complacency" toward the inmates, meaning actions like allowing inmates too near her, calling an inmate "honey" or "darling," and touching inmates.[20] Hunt County teaches that jailers must avoid such complacency because "inmates can turn quickly on officers and . . . erupt into violence."[21] On February 15, 2010, Hunt County's jailers discovered the inmates possessed a large amount of contraband at the jail.[22] Jailers allowing inmates to have contraband violates jail policy.[23] According to Greninger, several inmates said that Stafford allowed or facilitated the passing of the contraband.[24] The Hunt County Chief Jailer, David McGee, questioned Stafford about potential misconduct by her, and then placed her on administrative leave with pay.[25] McGee investigated the allegations and found evidence that substantiated the inmates' claims

---

[17] App. 210.
[18] App. 9–10, 28–29, 49.
[19] App. 10–11.
[20] App. 139.
[21] *Id.*
[22] App. 133, 140, 150.
[23] App. 141.
[24] App. 133.
[25] App. 133, 199.

about her involvement.[26] McGee says he confronted Stafford, who responded that she broke the rules "just because" and said that McGee should be more sympathetic to the inmates.[27] As a result of his investigation and conclusion that she violated jail policy, McGee recommended to Greninger that Stafford should be discharged.[28]

On February 17, 2010, McGee called Stafford and instructed her to meet with Greninger; however, Stafford indicated she did not feel well. She never met with Greninger nor did she have further contact with McGee.[29] Greninger, who had authority to make hiring and disciplinary decisions in the jail, sent Stafford a letter of discharge, which explained the details of McGee's investigation and the conclusion that her actions violated jail policies.[30]

On March 16, 2010, Stafford dually filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission (the "Commission"), alleging disability discrimination.[31] EEOC investigator Matamoros met with Stafford, who told him that her visual impairment was the reason for her termination.[32] The EEOC issued a "right-to-sue" letter to Stafford stating that her lawsuit must be filed within ninety days of her receipt of the right-to-sue letter.[33]

On June 15, 2010, Stafford filed suit against Hunt County and its sheriff, Randy Meeks, in the 196th District Court of Hunt County, Texas, alleging disability discrimination in violation of the Texas Commission on Human Rights Act ("TCHRA") and the Americans with Disabilities Act ("ADA"). On July 14, 2010, Defendants removed the case to this Court. Defendants now move for summary judgment.

---

[26] App. 140–41.
[27] App. 141.
[28] App. 141–42.
[29] App. 142.
[30] App. 194.
[31] App. 189.
[32] App. 190.
[33] App. 192.

## II. LEGAL STANDARD

Summary judgment is warranted if the pleadings, discovery, disclosure materials, and supporting affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[34] A genuine issue of material fact exists when a reasonable jury could find for the nonmoving party.[35] The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.[36] Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate, by designating specific facts beyond the pleadings that prove the existence of a genuine issue of material fact.[37] In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."[38]

## III. ANALYSIS

### A. Timeliness

The EEOC investigator's notes state that on March 16, he (1) informed Stafford of her right to sue, (2) signed the right-to-sue letter, and (3) "served" the right-to-sue letter on Stafford.[39] However, the record evidence does not indicate if service on Stafford was by mail or hand-delivery and Stafford testified she did not recall if she received the right-to-sue letter by

---

[34] Fed. R. Civ. P. 56(c).
[35] *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[36] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).
[37] *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).
[38] *Lynch Props.*, 140 F.3d at 625 (citation omitted).
[39] App. 193.

hand or by mail. On June 15, 2010, ninety-one days after the EEOC investigator signed the right-to-sue letter, Stafford filed this suit.

1. **TCHRA**

A person claiming to be aggrieved by an unlawful employment practice must file a complaint with the Commission[40] within 180 days of the alleged discriminatory act.[41] If the Commission dismisses the complaint or has not filed suit or negotiated a conciliation agreement within 180 days after the filing of the complaint, it must notify the complainant in writing.[42] The complainant may request from the Commission a written notice of right to file a civil action.[43] The Commission's failure to issue notice of a complainant's right to file a civil action does not affect the complainant's right to bring a civil action against her employer.[44] Under Texas Labor Code § 21.254, a discrimination claim under the TCHRA may be filed within 60 days after the date the plaintiff receives notice of the right to file a civil action.[45]

Although the sixty-day period is not considered jurisdictional under Texas law and thus does not prevent a district court from considering the TCHRA claim, actions for TCHRA violations filed in federal court more than sixty days after the Commission issues notice of a

---

[40] The Texas Workforce Commission, Civil Rights Division enforces the TCHRA, and assumes the powers and duties of the Texas Commission on Human Rights. *See Little v. Texas Dept. of Criminal Justice*, 148 S.W.3d 374, 377–78 (Tex. 2004) ("[T]he Commission on Human Rights was recently abolished and its powers and duties were transferred to the newly-created Civil Rights Division of the Texas Workforce Commission.").
[41] *See* Tex. Lab. Code Ann. § 21.202(a) ("A complaint under this subchapter must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred.").
[42] *See id.* § 21.208 ("If the commission dismisses a complaint filed under Section 21.201 or does not resolve the complaint before the 181st day after the date the complaint was filed, the commission shall inform the complainant of the dismissal or failure to resolve the complaint in writing by certified mail.").
[43] *Id.* § 21.252(a) ("A complainant who receives notice under Section 21.208 that the complaint is not dismissed or resolved is entitled to request from the commission a written notice of the complainant's right to file a civil action.").
[44] *Id.* § 21.252(d) ("Failure to issue the notice of a complainant's right to file a civil action does not affect the complainant's right under this subchapter to bring a civil action against the respondent.").
[45] *Id.* § 21.254 ("Within 60 days after the date a notice of the right to file a civil action is received, the complainant may bring a civil action against the respondent.").

right to file suit are routinely dismissed as untimely.[46] An EEOC right-to-sue notice is not interchangeable with a TCHRA "right to file a civil action" letter.[47] Receipt by Stafford of the EEOC's notice of right-to-sue does not trigger the analogous TCHRA's sixty-day filing period.[48]

The record before the Court contains no evidence that Stafford received a right to file a civil action letter from the Commission. Further, Stafford filed the action within two years of filing her complaint with the Commission.[49] Therefore, the Court does not have a basis to dismiss Stafford's TCHRA claims based on the sixty-day provision in § 21.254 or the two-year limitations period of § 21.256.

### 2. ADA

Under the ADA, lawsuits must be filed within ninety days of the plaintiff's receipt of a right-to-sue letter from the EEOC.[50] This requirement is strictly construed,[51] and "is a precondition to filing suit in district court."[52]

When the date on which a right-to-sue letter was actually received is either unknown or disputed, courts have presumed various receipt dates ranging from three to seven days after the letter was mailed.[53] Because Stafford did not allege the specific date on which she received the

---

[46] See, e.g., *Hansen v. Aon Risk Services of Tex.*, 473 F. Supp. 2d 743, 748 (S.D. Tex. 2007) ("[T]he court concludes that plaintiff's TCHRA claim is time-barred because it was filed more than 60 days after plaintiff received the TCHR's notice of right to sue."); *Lottinger v. Shell Oil Co.*, 143 F. Supp. 2d 743, 753 (S.D. Tex. 2001); *Dean v. Xerox Corp.*, No. 3:96–CV–2409–D, 1997 WL 756574, at *2 (N.D. Tex. Nov. 25, 1997); *Battee v. Eckerd Drugs, Inc.*, No. 396CV1551–R, 1997 WL 340941, at *10 (N.D. Tex. June 13, 1997).
[47] See *Jones v. Grinnell Corp.*, 235 F.3d 972, 975 (5th Cir. 2001).
[48] See *Jones v. Grinnell Corp.*, 235 F.3d at 975; *Vielma v. Eureka Co.*, 218 F.3d 458, 464–65 (5th Cir. 2000).
[49] A lawsuit brought under the TCHRA must be brought within two years after the filing of the complaint with the Commission. See Tex. Lab. Code Ann. § 21.256.
[50] 42 U.S.C. § 12117; 42 U.S.C. § 2000e-5(f)(1).
[51] See *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002) (citing *Ringgold v. National Maintenance Corp.*, 796 F.2d 769, 770 (5th Cir. 1986); *Espinoza v. Missouri Pacific R.R. Co.*, 754 F.2d 1247, 1251 (5th Cir. 1985)).
[52] *Books A Million, Inc.*, 296 F.3d at 379.
[53] See id. (citing *Lozano v. Ashcroft*, 258 F.3d 1160, 1164 (10th Cir. 2001); see also *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n. 1, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (presuming three days after delivery based upon Fed. R. Civ. P. 6(e)); *Banks v. Rockwell Intern. N. Am. Aircraft Operations*, 855 F.2d 324, 326 (6th Cir. 1988) (applying a five-day presumption)).

right-to-sue letter and the date the letter was received by her is unknown, the Court presumes that Stafford received the right-to-sue letter within three days of March 16, which makes her Complaint timely under the ADA.

### B. Proof of Disability Discrimination

The ADA and TCHRA prohibit discrimination against an individual with a disability.[54] Where circumstantial evidence is offered to show the alleged unlawful discrimination, the *McDonnell Douglas* Title VII burden-shifting analysis applies.[55] Under this framework, a plaintiff must first make a *prima facie* showing of discrimination by establishing that: (1) she is disabled or is regarded as disabled; (2) she is qualified for the job; (3) she was subjected to an adverse employment action on account of her disability; and (4) she was replaced by or treated less favorably than non-disabled employees.[56] Once the plaintiff makes the *prima facie* showing, the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Once the employer articulates such a reason, the burden then shifts back to the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination.[57]

---

[54] 42 U.S.C. §§ 12101 *et seq.*; Tex. Labor. Code § 21.051(1) ("[A]n employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer: (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment. . . .").

[55] *See EEOC v. Chevron Phillips Chemical Co., L.P.*, 570 F.3d 606, 615 (5th Cir. 2009) (applying *McDonnell Douglas* framework to ADA claim). *See also Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (applying *McDonnell Douglas* frame work to Title VII and TCHRA claims). The law governing claims under the TCHRA and Title VII is identical. *Reynolds v. Dallas Area Rapid Transit*, No. 3:98-CV-982-M, 2000 WL 1586444, at *5 (N.D. Tex. Oct. 20, 2000) (Lynn, J.) (citing *Shackelford*).

[56] *See Burch v. Coca-Cola Co.*, 119 F.3d 305, 320 (5th Cir. 1997), *cert. denied* 522 U.S. 1084, 118 S. Ct. 871, 139 L.Ed.2d 768 (1998).

[57] *See Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995); *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000). In this case, Defendants do not seek to apply the mixed motive alternative analysis. *See Cortez*, 663 F. Supp. 2d 514, 523 (N.D. Tex. 2009) (Kinkeade, J.).

1. *Prima Facie* Case

A disability under the ADA and TCHRA is: (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment.[58] A major life activity is an activity that is "central to the life process itself,"[59] and includes such functions as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."[60]

A person is substantially limited in a major life activity if she is unable to perform the activity; or is significantly restricted in the condition, manner, or duration under which she can perform the activity as compared to the average person in the general population.[61]

Her failure to establish an actual disability is fatal to Stafford's ADA and TCHRA claims. Stafford alleges her astigmatism substantially limits a major life activity, presumably seeing and/or working. The only activities affected by her astigmatism, as Stafford states, are swimming and other activities that require her to take off her glasses,[62] and she acknowledges that the astigmatism does not have a "big impact" on her daily activities.[63] Stafford's eyesight improved with use of corrective lenses.[64] Eye problems or dysfunctions that do not limit normal

---

[58] 42 U.S.C. § 12102(2); *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), *superseded in part by statute, ADA Amendments Act of 2008*, Pub. L. 110-325, 122 Stat. 3553 (2008); *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 474 (5th Cir. 2006). Section 21.002(6) of the Texas Labor Code defines "disability" as "a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment." *Id.* § 21.002(6). In interpreting the disability discrimination provisions of the TCHRA, "Texas courts generally look to most closely analogous provisions of the Americans With Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213." *Kiser v. Original, Inc.*, 32 S.W.3d 449, 452 (Tex.App.--Houston [14 Dist.] 2000, no pet.).
[59] *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998); *Waldrip v. Gen.Elec. Co.*, 325 F.3d 652, 655 (5th Cir. 2003); *Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc.*, 242 F.3d 610, 613–14 (5th Cir. 2001).
[60] 29 C.F.R. § 1630.2(i); *see also* 42 U.S.C. § 12102(2) (2006).
[61] 29 C.F.R. § 1630.2(j).
[62] App. 28.
[63] App. 4.
[64] App. 26–27.

daily activities do not constitute substantial limitations under the ADA,[65] and a person whose impairment is corrected by mitigating measures does not have an impairment that substantially limits a major life activity and is not disabled within the meaning of the ADA and TCHRA.[66] No rational finder of fact could reasonably conclude that Stafford's vision is substantially limited as compared to the average person in the population.[67]

Even if Hunt County Jail regarded Stafford as disabled for ADA and TCHRA purposes, she admits that she is not qualified for her job. A qualified individual with a disability is an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position.[68] In general, the "essential functions" of a job are the fundamental job duties of the employment position the individual with a disability holds or desires.[69] The ADA requires that consideration be given to the employer's judgment as to what functions of a job are essential.[70]

Here, Hunt County requires each jailer to be able to complete training and work in the control room. Stafford acknowledges that having the lights on in the control room did not help her and that if she had known she had to work the control room, she probably would not have

---

[65] *Still v. Freeport-McMoran, Inc.*, 120 F.3d 50, 51–52 (5th Cir. 1997).
[66] *Sutton*, 527 U.S. at 481–83.
[67] *Still*, 120 F.3d at 51–52 (finding that the plaintiff who was blind in one eye was not substantially limited in the major life activity of seeing because he was able to perform his normal daily activities despite a limitation in his peripheral vision caused by his partial blindness); *Cade v. Consolidated Rail Corp.*, No. 98-5941, 2002 WL 922150, at *13 (E.D. Pa. May 7, 2002) (holding astigmatism was not disability under ADA because it did not substantially limit plaintiff's ability to engage in major life activities).
[68] 42 U.S.C. § 12111(8); 29 C.F.R. 1630.2(m); *Chevron Phillips Chemical Co., L.P.*, 570 F.3d at 615 n. 7.
[69] 29 C.F.R. 1630.2(n)(1); *see also Chandler v. City of Dallas*, 2 F.3d 1385, 1393–94 (5th Cir. 1993), *cert. denied,* 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994) (essential functions are those that bear more than a marginal relationship to the job at issue).
[70] 42 U.S.C. § 12111(8).

been qualified for the job as jailer.[71] Therefore, for ADA and TCHRA purposes she is not qualified for her position as a jailer for Hunt County.

### 2. Non-Discriminatory Reason

Assuming Stafford met her burden of establishing a *prima facie* case of disability discrimination, Hunt County provides a legitimate nondiscriminatory reason for firing Stafford. Because Stafford allowed the passing of contraband, McGee concluded Stafford violated Hunt County Jail's policies, and recommended Stafford be discharged.

Because Stafford does not have a disability for purposes of the ADA and TCHRA, Defendants provide a legitimate nondiscriminatory reason for firing Stafford, and Stafford does not provide evidence that Defendants' reason for firing was pretextual, Defendants' Motion for Summary Judgment is **GRANTED** as to Stafford's ADA and TCHRA discrimination claim.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is **GRANTED**. The Court will enter a Final Judgment in a separate order.

**SO ORDERED.**

July 11, 2011.

                                                                   **BARBARA M. G. LYNN**
                                                                   **UNITED STATES DISTRICT JUDGE**
                                                                   **NORTHERN DISTRICT OF TEXAS**

---

[71] App. 9–10, 28–30, 49.